JON M. SANDS
Federal Public Defender
**WALTER I. GONÇALVES, JR.**
Assistant Federal Public Defender
State Bar No. 023659
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*walter_goncalves@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR17-857-TUC-CKJ (LCK) |
|---|---|
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| Steve Martan, | |
| Defendant. | |

**1.  Introduction:**

Steve Martan will come before the court for sentencing on March 8, 2018. For the following reasons, the court should impose a sentence of probation. This type of sentence, based on the facts and circumstances of this case and Mr. Martan, comport with the purposes of federal sentencing. 18 U.S.C. § 3553(a).

**2.  History and characteristics of the defendant:**

Mr. Martan is a 58-year-old man, born in Nogales, Arizona and raised there. In 1977, he moved to Flagstaff to attend Northern Arizona University. Although he did not graduate, he lived there until he was 30 years old, or 1989. He moved to Tucson and became a bartender and server at multiple locations until 2012, when he began working at Miles Elementary School. Mr. Martan worked at Miles Elementary School as a Teacher's Assistant and worked 35 hours per week, earning $10.00 per hour. Mr. Martan has never

married nor fathered any children although he has adopted dogs over the years and loved working with children. Due to his arrest he stopped working at the school.

Mr. Martan has an alcohol problem that has been addressed and is continuing to be addressed since his arrest. He also used marijuana but stopped since the arrest. His mental health condition is stable and the psychological evaluation that he submitted to concludes that he is a low risk to reoffend and low risk for violence.

After his release from custody, Mr. Martan was confined to his parents' home in Tubac with an ankle monitor. During the course of this restriction he worked by taking care of his elderly mother and father, 90 and 94 years old, respectively. He also worked as a landscaper for neighbors. After the court lifted the ankle monitoring restriction he obtained a job at Tubac Country Club as a waiter.

Mr. Martan has complied well on Pre-Trial Services supervision and maintains a regular schedule of appointments and visits for mental health and substance abuse rehabilitation. He attended anger management sessions, met with the victim, underwent a psychological evaluation, and completed 40 hours of community service.

**3.     Nature and Circumstance of the offense:**

At the time of the offense, or early May of 2017, Mr. Martan was drinking approximately eight beers in the evening, and becoming more and more angry about national and local politics, including certain decisions reported in the media by U.S. House Representative Martha McSally. The decisions coincided and agreed with decisions by President Donald Trump. This greatly upset Mr. Martan as he followed the news. On two different evenings, after becoming intoxicated, Mr. Martan left voice mails for Congresswoman McSally. At the time, he was under the impression that others left messages for her as well. He knew that it was wrong and is deeply ashamed by his actions. Mr. Martan apologized to the victim during the meeting with her and apologizes to the court.

**4. Seriousness of the offense, respect for the law, and just punishment:**

The offense is serious in the sense that Mr. Martan threatened Ms. McSally's life, although the threats were brief, without detail, and signaled, more than anything, anger. Mr. Martan has never met Ms. McSally, apart from the meeting in this case. He never owned a gun (he is against guns), and would never, ever engage in any physical acts against anyone. He is a pacifist. Mr. Martan was intoxicated when he made the phone calls, and admits that he has a substance abuse problem. He held a job at Miles Elementary for several years and resigned after his arrest.

Mr. Martan respects the law and has complied with all of his requirements on Pre-Trial Services release. In fact, he went over and beyond by attending numerous anger management classes. Defense counsel will be surprised if Mr. Martan is violated from probation or any other kind of supervision. Mr. Martan takes care of his elderly mother and father, and if they pass away, he may need to obtain some counselling.

**5. Adequate deterrence to criminal conduct:**

Social science research supports the fact that sending individuals to prison does nothing to deter others in similar positions. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) and Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005). This means that following the recommendation of the probation writer in the PSR and sending him to prison will do absolutely nothing to deter others angry at politicians and willing to threaten them. Those individuals will not stop because Mr. Martan or similarly situated individuals were sent to prison for similar or more serious acts. People that threaten other individuals do so without being fully aware of the consequences of their actions. In this case, for instance, Mr. Martan was under the influence of alcohol, but did not even think he would be arrested and charged for a federal felony.

3

**6.  Protection of the public from further crimes of the defendant – recidivism:**

The focus, instead, should be on individual deterrence. The court should focus on what risk Mr. Martan poses to reoffend. The psychological evaluation conducted by Peter L.S. Shibuya, Ph.D. concluded that Mr. Martan is of a low risk to reoffend and of little risk for future violence. Mr. Martan worked with children, has tremendous support from family and friends, has very good character traits, is employed, performed very well on release, and is looking forward to the future. He apologized to the Congresswoman and she accepted his apology. Why would the court want to send him to prison? Prison makes absolutely no sense in this case.

**7.  Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:**

A prison sentence for Mr. Marta will disrupt the services that his elderly mother and father get from him, which include his love and care. He is the only surviving sibling that is able to take care of them in Tubac. Prison will also cut his employment. It will disrupt the flow of services that he receives in the community and his progress in rehabilitation. A prison sentence also goes against everything analyzed and concluded in the psychological evaluation. Sure, Mr. Martan has traits of histrionic personality, but no one is perfect. He is apologetic and even the victim appears to not want him to go to prison. This was alluded to during the meeting between her and Mr. Martan, for which the prosecutor, probation officer, and defense counsel were present. While it is true that both the probation officer and the prosecutor found that Mr. Martan was not remorseful enough during his meeting with the victim, this is because he is a quiet person, reserved, and sometimes has trouble expressing himself. But he is actually very sorry and will never do anything like this again.

Further, a prison sentence will expose Mr. Martan to more serious offenders that will negatively impact him. Mr. Martan is an asset to the community. The letters written

from friends and family on his behalf prove this. There is evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism. Lynne M. Vieraitis, Tomaslav V. Kovandzic, 55 Thomas B. Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Public Policy 589 (2007); USSC, Staff Discussion Paper at 18-19, Sentencing Options under the Guidelines (Nov. 1996). What Mr. Martan needs is supervision. In fact, he is required to complete no less than 108 months of probation per the plea agreement, with a chance of having it reduced to 54 months at the halfway point. He is not getting off easy and is now a federal felon, with much more limited opportunities for housing, voting, sitting on a jury, having a gun for self-protection, obtaining certain licenses, and a serious of other serious collateral consequences. *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789 (2012) and *What Are Defense Lawyers for? Links Between Collateral Consequences and the Criminal Process*, 45 Tex. Tech L. Rev. 151, 162 (2012)

**8. Avoiding unwarranted disparities and unwarranted similarities:**

There are not many cases like this in this district. It is difficult to ascertain what is an unwarranted disparity or similarity, but what we can say is that Mr. Martan possesses all of the characteristics of someone who will succeed on supervision. Further, the nature of the offense, apology and acceptance by the victim, and assurances by a psychologist that Mr. Martan is of little risk to reoffend and is not violent, all favor a sentence of probation.

**9. Conclusion:**

A sentence of probation fulfills the purposes of federal sentencing. 18 U.S.C. § 3553(a).

//
//
//

1 | RESPECTFULLY SUBMITTED this 1st day of March, 2018.

JON M. SANDS
Federal Public Defender

*s/ Walter I. Gonçalves, Jr.*
WALTER I. GONÇALVES, JR.
Assistant Federal Public Defender

*The above signed does hereby certify that on the above date, he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:*

Angela Woolridge
Assistant U.S. Attorney