1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
ANGELA W. WOOLRIDGE
AZ State Bar No. 022079
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: angela.woolridge@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | CR17-0857-TUC-CKJ (LCK) |
| vs. | GOVERNMENT'S SENTENCING MEMORANDUM |
| Steven Martan, | |
| Defendant. | |

Plaintiff, United States of America, by and through its attorneys undersigned, hereby files its Sentencing Memorandum in the above-referenced case.  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the government respectfully requests this Court sentence the defendant, Steven Martan, to 24 months prison followed by nine years of supervised release.  Sentencing is set for March 8, 2018.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    FACTS AND PROCEDURAL HISTORY

On May 2, 2017, and May 10, 2017, while in Tucson, Arizona, the defendant, Steven Martan, made three telephone calls to the office of Second District of Arizona United States Congresswoman Martha McSally. The defendant made threatening statements to Congresswoman McSally via one voice message left on the congressional office voicemail on May 2, and two more messages left on May 10.

Within the first voice message, the defendant stated, among other things: "Yeah this is for Martha McSally," and "And if I could ring your fucking neck.  You need to get back

to where you came from and leave Arizona." Within the second voice message, the defendant stated, among other things: "Yeah Martha, our sights are set on you, right between your fucking eyes," and "Be careful when you come back to Tucson cause we hate you here, okay," and "Can't wait to fucking pull the trigger bitch." Within the third voice message, the defendant stated, among other things: "Yeah Martha, your days are numbered."

The congressional office voicemail caller identification revealed the calls were made from telephone number 520-240-8246. Verizon Wireless subscriber information listed the defendant as the subscriber of this number. The defendant was subsequently identified and located. Upon making contact with the defendant at his residence, agents located the cellular telephone associated with the above-referenced number in the defendant's pocket. The defendant admitted that he had used this phone to call the office of Congresswoman McSally. The defendant stated that he was venting frustrations with Congresswoman McSally's congressional votes in support of the President of the United States. The defendant was thereby retaliating against Congresswoman McSally on account of the performance of her official duties, and was attempting to impede, intimidate, and interfere with her performance of her official duties.

On May 31, 2017, the defendant was indicted in this case on three counts of Influencing, Impeding, or Retaliating Against a Federal Official by Threatening. On August 23, 2017, the defendant pleaded guilty to all three counts of the Indictment pursuant to a written plea agreement. On October 16, 2017, pursuant to the terms of the plea agreement, the defendant and his attorney attended a meeting with the victim and her representatives, counsel for the government, law enforcement agents involved in this investigation, and the probation officer assigned to this case.

On March 5, 2018, in assisting the victim in preparing for the upcoming sentencing, members of the victim's staff discovered that on May 4, 2017, the defendant had left three additional voice messages on the victim's congressional office voicemail. These voice messages had not been previously discovered due to limitations of the voicemail system,

but staff were able to verify that the messages were received from the same number used by the defendant. The nature of the messages and the defendant's voice are also consistent with the three messages that are the subject of the charges in this case. The defendant left these messages at 8:14 p.m., 8:28 p.m., and 8:41 p.m. on May 4, 2017.

Similar to the May 2 and May 10 messages, these messages are vulgar, verbally abusive, and very threatening. Among other things, in the first message the defendant states: "Our sights are in between your fucking eyes . . . We have to do whatever we have to do to get rid of you. If that fucking means a bullet through your brain, that's what it's going to take . . . I can't wait to see you in my sights to blow your brains out." In the second message the defendant states, interspersed with other vulgarities and insults: "Your days are numbered. There's a bunch of us out there that are ready to blow your fucking brains out . . . just stay indoors, I'm warning you." In the third message the defendant states, among other things: "We just bought a bunch of ammunition at a gun store to fucking blow your fucking brains out . . . You're gone . . . Can't wait to fucking blow your brains out."[1]

## II.    APPLICABLE GUIDELINE CALCULATIONS

The government agrees with the guideline calculations in the Presentence Report. The base offense level for the defendant's crimes is 12. *See* U.S.S.G. §2A6.1(a)(1). Two levels are added pursuant to U.S.S.G. §2A6.1(b)(2) because the defendant made more than two threats against the victim. Another six levels are added because the victim is a government officer and the offenses were motivated by such status. *See* U.S.S.G. §3A1.2(b). Three levels are subtracted for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). The government agrees that the appropriate total offense level in this case is 17. Together with the defendant's Criminal History Category of I, the

---

[1] On the same day these messages were discovered by the victim's staff, audio recordings of the messages were provided to counsel for the government. Counsel for the government subsequently provided the recordings to counsel for the defendant, the probation officer, and law enforcement agents on the same date.

1 applicable guideline sentencing range is 24 to 30 months prison. The plea agreement

2 entered into by the parties provides for a sentencing range of up to 24 months prison for

3 each count, to be served concurrently, followed by a total of nine years supervised release

4 (three years for each count, to be served consecutively).

5 **III.    GOVERNMENT'S SENTENCING RECOMMENDATION**

6 The government respectfully requests that the Court sentence the defendant to a

7 term of imprisonment of 24 months prison, followed by the agreed-upon supervised release

8 term of nine years. The government believes this sentence appropriately reflects the facts

9 and circumstances of the defendant's criminal conduct in this case and the individual

10 characteristics of the defendant.

11 A sentence of 24 months is necessary to reflect the severity of the defendant's

12 offense. On six separate occasions, he called a member of Congress and threatened to kill

13 her in very explicit and unequivocal terms. Whether he ever intended to act on his death

14 threats, his words alone were incredibly harmful and damaging. He intended to cause fear

15 in the victim and prevent her from performing her job as a member of our nation's

16 legislature. While the victim was admirably undeterred, the defendant's terrifying threats

17 certainly could have intimidated the recipient and impeded the administration of

18 government – as was the defendant's intent.

19 Furthermore, the far-reaching consequences of the defendant's crimes cannot be

20 overstated. The chilling effect of death threats to a government official because of her

21 political views, such as those made repeatedly by the defendant to the victim, deters others

22 from seeking political office, impairs our system of government, and discourages civil

23 discourse. Especially in this community and at this day and age, the suggestion that a

24 public servant should be murdered because of her political views or party affiliation is

25 exceptionally harmful and disturbing.

26 Of considerable concern to the government is the fact that the defendant has failed

27 to fully recognize or accept the severity of his conduct. He minimizes his crimes by

28 claiming he would never act on his threats, despite the victim and counsel for the

4

government having explained to him the harm caused by his vile and hateful words alone. He blames his conduct on being drunk, but ignores the fact that on six separate occasions he made the conscious choice to pick up the phone, dial the number for the victim's congressional office, and leave abhorrent death threats directed specifically at her.

The defendant also attempts to rationalize his conduct by stating that he assumed the calls were anonymous. That the defendant somehow believed his conduct was acceptable because he did not think he would get caught is disturbing, and further demonstrates he recognized his actions were wrong. He also tries to excuse his depraved behavior by stating he thought the victim would simply assume his death threats were from a "nut venting his frustrations." Again, the defendant fails to recognize the severity and consequences of his crimes, and his assumption of what the victim might think or feel is remarkably shortsighted.

The defendant also has a history of offenses stemming from his alcohol abuse, but has failed to take the necessary steps toward addressing his problem. He has twice been convicted of driving under the influence, and has a third arrest for the same crime. It also appears the defendant has significant anger management issues, and that both his alcohol and anger problems contributed to his offenses in this case. Yet despite having numerous resources available to assist him in overcoming these issues – and despite having been given the incredible opportunity to demonstrate to the Court that he is deserving of a sentence involving little or no further incarceration – he has chosen not to avail himself of substance abuse or anger management programs, instead contending that he will simply stop consuming alcohol and watching television news. The defendant's misguided approach to managing his problems and failure to fully acknowledge his shortcomings suggest he remains a significant risk to the community.

## IV.    CONCLUSION

For the reasons discussed, the government respectfully requests that this Court sentence the defendant to 24 months prison and nine years supervised release. The

5

government submits that this sentence is appropriate based on the facts and circumstances of the offenses and violations, and the individual characteristics of the defendant.

Respectfully submitted this 6th day of March, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Angela W. Woolridge*

Angela W. Woolridge
Assistant United States Attorney

Copy of the foregoing served
electronically or by other means
this 6th day of March, 2018, to:

Walter Goncalves, Esq.
Attorney for the defendant